IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARK A. MANFRED,

   Plaintiff,

     v.

B.D. EVERETT, #14150 Correctional County Detention, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:04-CV-3223-TWT

OPINION AND ORDER

This is a *pro se* prisoner civil rights action. It is before the Court on the Defendant B.D. Everett's Motion for Summary Judgment [Doc. 19]. For the reasons set forth below, the Defendant's motion is GRANTED.

I. BACKGROUND

Plaintiff Mark Manfred's claims arise in connection with events that occurred while he was housed at the Clayton County Jail in Jonesboro, Georgia. The Plaintiff originally brought suit against Stanley Tuggle, the former Sheriff for Clayton County, and a jail correctional officer, B.D. Everett, both of whom were sued individually and in their official capacities. The complaint also included claims against Major Michael G. Maddox, the Clayton County Sheriff's Department, and the State of Georgia. This

Court subsequently dismissed all Defendants except for Officer Everett, who remains as a defendant in his individual capacity.  Against this Defendant, the Plaintiff asserts a constitutional claim of excessive force as well as state law claims for assault and battery and intentional infliction of emotional distress.

In his complaint, the Plaintiff alleged the following facts: (1) on March 29, 2004, after the Plaintiff finished showering, he exited a shower stall, dressed and began retrieving his "shower articles" from a table located in front of the shower; (2) while the Plaintiff was retrieving his "shower articles," Defendant Everett walked toward the Plaintiff, passed him, and then approached him from behind; (3) when the Plaintiff turned to enter his cell from the shower area, the Defendant, while standing behind the Plaintiff, and without any verbal warning or command, picked the Plaintiff up by his mid-section, lifted him into the air, and slammed him to the concrete floor; (4) the Defendant then picked the Plaintiff up by his arm and jumpsuit and again slammed him to the concrete floor; (5) the Defendant picked the Plaintiff up a third time and attempted to slam him to the floor again, but was prevented from doing so by the Plaintiff, who held onto the Defendant's leg; (6) while the Plaintiff was holding onto the Defendant's leg, the Defendant punched him in the mouth with his right fist; (7) the Defendant then again slammed him to the concrete floor, causing both the Plaintiff and the Defendant to fall to the ground; (8) the Plaintiff became dizzy and

experienced sharp pains to his lower back from hitting his head on the side of a metal chair and could not move; (9) the Defendant picked the Plaintiff up, put his hands behind his back, bending his left wrist into an "awkward and painful position" while at the same time, pushing the Plaintiff into his cell; (10) the Defendant slammed the Plaintiff's face into the cell wall, causing his lower lip and gums to bleed; (11) the Defendant took out his mace and instructed the Plaintiff to put his hands against the wall while the Defendant exited the cell; and (12) after seeking emergency medical help, the Plaintiff was treated by a nurse and then by a doctor.

Defendant Everett's summary of this encounter paints a starkly different picture. Both he and Toni Thomas, the on-duty Control Tower Officer in the housing unit where the Plaintiff was placed, state that they observed the Plaintiff coming out of the shower wearing only his underwear. (Everett Aff., ¶ 4; Thomas Aff., ¶ 4.) This was a violation of the Clayton County Detention Facilities' dress code, (Def.'s Mot. for Summ. J., Ex. C), with which the Plaintiff has acknowledged his familiarity. (Manfred Dep., at 29.) The Defendant claims that after he entered the unit and told the Plaintiff to put on his uniform and lock down, the Plaintiff responded by stating, "I am, f— Nigga" and then turning around toward the Defendant with a clenched fist. (Everett Aff., ¶ 5.) As a result of this threatening gesture, the Defendant alleges that he grabbed the Plaintiff by his right arm and attempted to restrain him from striking

him. (Id., ¶ 6.) In doing so, both parties slipped on the wet floor. The Defendant claims that he then got back on his feet, helped the Plaintiff to his feet, and escorted him back to his cell. (Id., ¶ 7.) He alleges that during the walk back to the Plaintiff's cell, the Plaintiff stated several times, "F— you, nigga." (Id.)

The Defendant filed and the Plaintiff received written discovery requests, including the Defendant's First Request for Admissions. (Def.'s Mot. for Summ. J, Ex. E.) The Plaintiff failed to respond to these requests. According to Federal Rule of Civil Procedure 36, this failure results in the Plaintiff's admission of these statements.[1] The Plaintiff thus admits the following: (1) At approximately 2015 hours on March 29, 2004, the Defendant instructed the Plaintiff to put on his uniform as he was exiting the shower area; (2) after the Plaintiff raised his arms in a threatening manner, the Defendant attempted to restrain him; (3) in the process, both men slipped and fell on the wet floor in front of the shower area; (4) the Defendant assisted the Plaintiff to his feet and then escorted him to his cell; (5) while walking to the cell, the Plaintiff shouted several obscenities at the Defendant; (6) the Plaintiff pressed the emergency call button in his cell after the Defendant left the section and advised the

---

[1] The Eleventh Circuit has recognized that Rule 36 should be applied against parties proceeding *pro se* when the party received actual notice of the requests for admissions and failed to respond to them. United States v. 2204 Barbara Lane, 960 F.2d 126, 129 (11th Cir. 1992); see also Stubbs v. Commissioner of I.R.S., 797 F.2d 936, 938 n.1 (11th Cir. 1986).

officer that his lip was bleeding and that he needed to see the medical staff; (7) a paramedic entered Housing Unit 4 at approximately 2030 hours and examined the Plaintiff; and (8) she reported only a small scratch on the left side of the Plaintiff's bottom lip and then cleared the Plaintiff to remain in lock down.[2]  Based on these facts, Defendant Everett now moves for summary judgment on all charges against him.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show

---

[2] The Defendant also requested that the Plaintiff admit that the Defendant used reasonable force to restrain him. (Def.'s Mot. for Summ. J, Ex. E, ¶ 10.) However, this request calls for a legal conclusion which is impermissible. See Perez v. Miami-Dade County, 297 F.3d 1255, 1261 n.12 (11th Cir. 2002) (noting that the district court struck a number of requests for admissions that were not timely responded to because they improperly called for legal conclusions); Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1339 n.6 (M.D. Fla. 2006); see also Pickens v. Equitable Life Assur. Soc. of U. S., 413 F.2d 1390, 1393 (5th Cir. 1969) ("[R]equests for admissions as to central facts in dispute are beyond the proper scope of [Rule 36]."). The Court finds this request to be improper and thus holds that the Plaintiff's failure to respond does not constitute an admission.

the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Without evidence sufficient for a jury to return a verdict in favor of the nonmoving party, there is no issue for trial. Id. at 249; Bost v. Federal Express Corp., 372 F.3d 1233, 1237 (11th Cir. 2004).

### III. DISCUSSION

#### A. Federal Claims

The Plaintiff has brought § 1983 claims against the Defendant under the Fourth, Eighth, and Fourteenth Amendments. A police officer is generally entitled to qualified immunity for his discretionary actions, however. See, e.g., Harris v. Coweta County, Ga., 433 F.3d 807, 811 (11th Cir. 2005); Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003). Thus, as a threshold inquiry, the Court must determine whether the Plaintiff's allegations, if true, establish a constitutional violation. Carr, 338 F.3d at 1266 (quoting Hope v. Pelzer, 536 U.S. 730, 736 (2002)).

Because the Plaintiff was a pretrial detainee and not a convicted and sentenced inmate, the Fourteenth Amendment–rather than the Eighth Amendment prohibition against cruel and unusual punishment–applies to his claims. See Graham, 490 U.S.

at 393 n.6 (citing Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977)).  For a pretrial detainee to prevail in a Fourteenth Amendment substantive due process claim, he must show that the Defendant's conduct "shocks the conscience."  Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1996 (11th Cir. 2003).  This standard means that "the conduct must 'do more than offend some fastidious squeamishness or private sentimentalism about combating crime too energetically'; it must 'offend even hardened sensibilities.'"  Carr, 338 F.3d at 1271 n.23 (quoting Rochin v. California, 342 U.S. 165, 172 (1952)).  In evaluating whether a pretrial detainee's excessive force claim meets this standard, the Court looks at several factors including: (1) the need for force; (2) the amount of force used; (3) the extent of injury inflicted; and (4) "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Id. (quoting Jones v. City of Dothan, Ala., 121 F.3d 1456, 1461 (11th Cir. 1997) (per curiam)).

      Here, even viewed in the light most favorable to the non-moving party, no genuine issue exists for a jury's determination.  First, the Defendant, through his own affidavit and that of Officer Thomas, has shown he acted in response to a perceived threat from the Plaintiff.  He approached the Plaintiff because the Plaintiff was violating Clayton County Jail rules.  When the Plaintiff responded in a threatening manner, the Defendant reacted by attempting to restrain him, which resulted in both

of them slipping and falling on the wet floor.  The Defendant then helped the Plaintiff to his feet and escorted him back to his cell.  (Everett Aff., ¶ 7; Def.'s Mot. for Summ. J., Ex. E, ¶ 4.)

The Plaintiff has failed to present any evidence beyond the pleadings to support a contrary conclusion.  He has admitted that he left the shower with his uniform partially unbuttoned, showing his chest, and that he was instructed by the Defendant to put on his uniform and lock down.  (Manfred Dep., at 67; Def.'s Mot. for Summ. J, Ex. E, ¶ 1.)  In the Plaintiff's deposition, moreover, he states that he turned toward the Defendant with his hands out in front of his chest and that his right shoulder bumped into the Defendant's chest.  (Manfred Dep., at 53, 74-75.)  Thus, under either party's version of events, it was reasonable for the Defendant to act in response to this perceived threat.

Furthermore, no probative evidence demonstrates that the amount of force used by the Defendant was unreasonable or that the Plaintiff sustained any significant injuries as a result of that force.  The Plaintiff claimed in his complaint that the Defendant: (1) slammed him to the ground three times; (2) hit his head on the side of a metal chair; (3) punched him in the face; and (4) slammed his face into the cell wall causing his lower lip and gums to bleed.  (Compl., ¶ 4.)  He has failed, however, to produce any evidence in support of these allegations.  Despite this extensive violence

allegedly inflicted upon him by the Defendant, the Plaintiff further admits that he was assessed by the paramedic as having only a scratch on his lip, for which he received Ibuprofen. (Compl., ¶ 4; Manfred Dep., at 63; Def.'s Mot. for Summ. J, Ex. E, ¶ 8.)

Applying the <u>Carr</u> factors to the present case, this Court concludes that the Plaintiff has not set forth any probative evidence that "shocks the conscience" and that would thus merit a jury verdict in his favor. Based on the evidence presented, the Court finds that the situation confronted by the Defendant presented a need for force, the amount of force used by the Defendant was reasonable under the circumstances, the Plaintiff's injuries were not significant, and the Defendant's actions were not wanton or malicious. Considering these factors in concert, no jury could properly rule in favor of the Plaintiff. Therefore, summary judgment for the Defendant is justified.

B. <u>State Claims</u>

The Plaintiff's state law claims are dependent upon his federal claim for violation of the Fourteenth Amendment. Rather than dismiss the state law claims on the merits, the Court declines to accept supplemental jurisdiction under 28 U.S.C. § 1367(c). The state law claims are dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 19] is GRANTED.

SO ORDERED, this 9 day of June, 2006.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge